IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JIMMIE CLEMONS, Individually and
on behalf of those similarly situated,

          Plaintiff

   v.

PHB, INC. and E-TRANSPORT
GROUP, INC.,

        Defendants.

§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 3:17-cv-417

---

**JOINT OPPOSITION TO CONDITIONAL CERTIFICATION**

---

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.    BACKGROUND ................................................................. 2

    A.    ETG's operations .................................................. 2

    B.    PHB's operations as a third party provider of yard management
         services.................................................................... 4

    C.    Plaintiffs and purportedly similarly-situated individuals were
         employed by PHB in Dallas, Texas......................................... 5

III.    ARGUMENT ...................................................................... 6

    A.    The court should grant ETG's pending summary judgment motion,
         which will moot Plaintiffs' request ........................................ 6

    B.    Standard for issuing a *Hoffman-LaRoche* notice ................................ 8

    C.    Plaintiffs do not identify any FLSA-violating policy that supports
         utilizing a *Hoffman-LaRoche* notice ...................................... 10

    D.    Plaintiffs have not carried their burden to show they are similarly-
         situated with respect to claims and defenses........................................ 13

    E.    Plaintiff have not met their burden to show other individuals
         wish to opt in ............................................................ 18

    F.    Plaintiffs' proposed notice method is overly broad and should be
         limited.................................................................... 19

IV.    CONCLUSION.................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842 (N.D. Tex. Oct. 7, 2004) .................................................................................................................... 20

*Allen v. Coil Tubing Svc., LLC*, 755 F.3d 279 (5th Cir. 2014) ............................ 14, 15

*Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287 (S.D. Tex. 2012) ...... 11, 12

*Arceo v. Orta*, 2017 WL 4948535 (N.D. Tex. Nov. 1, 2017) ........................................ 19

*Bouthner v. Cleveland Const., Inc.*, 2012 WL 738578 (D. Md. Mar. 5, 2012) ............ 16

*Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344 (E.D.N.Y. 2011) ..................................... 11

*Crawford v. Saks & Co.*, 2016 WL 3090781 (S.D. Tex. June 2, 2010) ........................ 7

*Cruz Miguel Aguina Morales v. Redco Transp. Ltd.*, 2015 WL 9274068 (S.D. Tex. Dec. 21, 2015) ............................................................................................................ 3

*Detho v. Bilal*, 2008 WL 1730542 (S.D. Tex. Apr. 10, 2008) ..................................... 19

*Domain Vault LLC v. McNair*, 2015 WL 5695519 (N.D. Tex. Sept. 28, 2015) ........... 3

*Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134 (2018) ........................................ 7

*England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504 (M.D. La. 2005) ............. 10

*Espenscheid v. Directsat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) ............................. 9

*Frazier v. Dallas/Fort Worth Int'l Airport Bd.*, 285 F. Supp. 3d 969 (N.D. Tex. 2018) .................................................................................................................... 18

*Freeman v. Walmart Stores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003) ................ 10

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) .......................................... 7

*H&R Block Ltd. v. Houdsen*, 186 F.R.D. 399 (E.D. Tex. 1999) ................................... 9

*Hall v. Burk*, 2002 WL 413901 (N.D. Tex. Mar. 11, 2002) ....................................... 18

*Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856 (S.D. Tex. 2012) .......................... 20

*Hickson v. U.S. Postal Svc.,* 2010 WL 3835887 (E.D. Tex. July 22, 2010) ............... 13

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).................................. passim

*Jones v. JGC Dallas LLC*, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012).................. 20

*Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663 (N.D. Tex. 2007) .................... 18

*Levinson v. Spector Motor Svc.*, 330 U.S. 649 (1947) .................................................... 6

*Lewis-Gursky v. Citigroup, Inc.,* 2017 WL 892604 (M.D. Fla. Mar. 6, 2017) ...... 12, 16

*Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987) ................................................. 9

*MacGregor v. Farmers Ins. Exchange*, 2011 WL 2981466 (D.S.C. July 22, 2011) .... 10

*Maren Equip. Leasing v. DHL Express USA*, 2013 WL 12121304 (C.D. Cal. Oct. 22, 2013), aff'd sub nom. *Maren Equip. Leasing, Inc. v. DHL Express USA*, 628 F. App'x 514 (9th Cir. 2016) ........................................................................................... 3

*Meritwether v. Beverly Hills Liquor & Grocery Inc.,* 2014 WL 200355 (E.D. Mo. Jan. 17, 2014) ................................................................................................................... 10

*O'Donnell v. Robert Half Int'l, Inc.*, 534 F. Supp.2d 173 (D. Mass 2008).................. 19

*O'Neal v. Kilbourne Medical Labs.*, 2007 WL 956428 (E.D. Ky. Mar. 28, 2007) ........ 7

*Orozco v. Plackis,* 757 F.3d 445 (5th Cir. 2014)......................................................... 12

*Portillo v. Permanent Workers, LLC*, 662 Fed. Appx. 277 (5th Cir. 2016) ................. 9

*Road Hog Trucking, LLC v. Hilmar Cheese Co., Inc.,* 2016 WL 6125677 (N.D. Tex. Oct. 19, 2016).................................................................................................. 12, 16

*Rodriguez v. RCO Reforesting, Inc.*, 2017 WL 2618751 (E.D. Cal. June 16, 2017)... 10

*Saleen v. Waste Mgmt., Inc.*, 2009 WL 1664451 (D. Minn. June 15, 2009).............. 17

*Salinas v. O'Reilly Automotive, Inc.*, 2005 WL 3783598 (N.D. Tex. Nov. 17, 2005) .. 8, 9, 10, 11

*Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007)........... 12

*Songer v. Dillon Resources, Inc.*, 569 F. Supp. 2d 703 (N.D. Tex. 2008) ....... 15, 18, 19

*Songer v. Dillon Resources, Inc.*, 618 F.3d 467 (5th Cir. 2010)........................ 6, 7, 11

*Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682 (D. Md. 2010)..................................... 10, 14

*Thorogood v. Sears, Roebuck and Co.*, 624 F.3d 842 (7th Cir. 2010)........................ 13

*Vasquez v. Am. Bor-Trench, Inc.*, 2014 WL 297414 (S.D. Tex. Jan. 23, 2014) .......... 12

*Williams v. Accredited Home Lenders, Inc.*, 2006 WL 2085312 (N.D. Ga. July 25, 2006) .................................................................................................................... 13

## Statutes

29 U.S.C. § 206................................................................................................... 11

29 U.S.C. § 213(b)(1) ............................................................................................ 1

29 U.S.C. § 216(b) ............................................................................................... 11

## Rules

Fed. R. Civ. P. 1 .............................................................................................. 1, 16

## Regulations

29 C.F.R. § 782.1................................................................................................. 6

46 Fed. Reg. 37902-02......................................................................................... 6

## Other Authorities

Douglas C. Grawe, *Have Truck, Will Drive: The Trucking Industry and the Use of Independent Owner-Operators Over Time*, 35 TRANSP. L.J. 115 (2008)................... 3

PHB, Inc. and E-Transport Group, LLC ("ETG") respectfully submit this Joint Opposition to Plaintiff's Motion for Conditional Certification of FLSA Collective Action and for Issuance of Notice (ECF No. 50) ("Conditional Cert. Motion").[1]

## I.     INTRODUCTION

The ultimate issue is whether Plaintiffs have demonstrated that sending *Hoffman-La Roche* notices to between 650 and 700 PHB drivers the four Plaintiffs assert are similarly situated will increase manageability and efficiency in litigating their nationwide FLSA overtime claims. But a prerequisite to the FLSA's application is an employment relationship, which ETG did not have with Plaintiffs or the other PHB drivers who are spread out across 16 states and 26 facilities. And, the PHB drivers were all commercial motor vehicle drivers the Federal Motor Carrier Safety Administration has jurisdiction over who are, in turn, exempt from the FLSA's overtime provision under 29 U.S.C. § 213(b)(1) ("Motor Carrier Act Exemption").

Rather than explain how they will efficiently resolve whether FLSA coverage even exists as to these PHB drivers or manage variations in Plaintiffs' claims and Defendants' defenses, Plaintiffs rely on buzz words about the "lenient" standard for court approval of a *Hoffman-La Roche* notice. Approving such a notice—frequently referred to as the "conditional certification" stage of an FLSA collective action—is not an exercise in semantics. It is a reasoned assessment of each case's facts and evidence to determine if use of this procedural tool furthers the manageability and efficiency

---

[1] ETG and PHB are unrelated entities, with no common ownership, and have separate counsel in this case. In an effort to reduce costs and streamline the litigation consistent with Fed. R. Civ. P. 1, ETG and PHB collaborated in order to file this Joint Opposition.

goals of litigation. As Plaintiffs' papers fail to demonstrate those goals are furthered by sending out the *Hoffman-La Roche* notice, there is no justification for using this case management tool here.

## II.   BACKGROUND

### A.   ETG's operations

Costs associated with the coordination of movement and storage of goods from the point of origin to the end consumer account for approximately 8 percent (close to $1.50 trillion) of America's gross domestic product. *App.* 137.[2] Given the significant costs, companies often outsource portions of their transportation needs to businesses like ETG to increase efficiency in product movement, reduce transportation expenses, and allow the company to focus on its core business.[3]

Among the ways ETG offers this value to its transportation customers is through administration of customer billing, accounts payable, cargo claims administration etc., along with oversight of insurance procurement and compliance with Federal Motor Carrier Safety Administration regulations. *Detlefsen Decl.*, ¶ 8.[4] Another service offering ETG provides is facilitating the transportation of customer products. Home Depot, USA, Inc. ("Home Depot") is an example of a customer relying on ETG to move its product.

---

[2] A copy of Rosalyn Wilson, 26th Annual Council of Supply Chain Mgmt. Prof'ls State of Logistics Report: Freight Moves in the Economy in 2014 (June 23, 2015), is included at App. 114-137.

[3] *Id.* at p. 20 ("shippers using [third-party logistics companies] have experienced an average logistics cost reduction of 9%, an average inventory cost reduction of 5%, and average fixed logistics cost reduction of 15%, and improvements in order fill rates of 60 to 66% and order accuracy of 61 to 66%").

[4] A copy of the Declaration of John Detlefsen is included at App. 1-4.

Transportation of the Home Depot products requires authority from the Federal Motor Carrier Safety Administration, which ETG has as both an authorized property-broker and motor-carrier.[5] ETG does not, however, have the trucks or workers necessary to complete the transportation. In turn, ETG contracts with independent-contractor agents and independent-contractor drivers who own, lease, or otherwise have legal possession of a commercial motor vehicle necessary to transport the product. Such arrangements are quite common in the transportation industry.[6] Co-defendant PHB is the independent-contractor agent ETG contracts with for this aspect of the transportation at the Home Depot location where Plaintiffs worked.

---

[5] A true and accurate printout from the FMCSA's database is included at App. 138-144. This printout is available at https://safer.fmcsa.dot.gov/CompanySnapshot.aspx by searching for MC/MX Number 809157 and clicking the "Licensing & Insurance" link in the upper-right corner. The Court can take judicial notice of ETG's FMCSA registration. *See Domain Vault LLC v. McNair*, 2015 WL 5695519, at *3 (N.D. Tex. Sept. 28, 2015)(noting that the court may take judicial notice of " [f]ilings with government agencies, public records, and government documents available from an official government website or other reliable source on the Internet."(internal citations omitted)); *Cruz Miguel Aguina Morales v. Redco Transp. Ltd.*, 2015 WL 9274068, at *1 (S.D. Tex. Dec. 21, 2015) (recognizing permissibility of judicial notice of FMCSA broker classification); *Maren Equip. Leasing v. DHL Express USA*, 2013 WL 12121304, at *3 (C.D. Cal. Oct. 22, 2013), aff'd sub nom. *Maren Equip. Leasing, Inc. v. DHL Express USA*, 628 F. App'x 514 (9th Cir. 2016) (taking judicial notice of FMCSA motor carrier registration printout).

[6] *See* Douglas C. Grawe, *Have Truck, Will Drive: The Trucking Industry and the Use of Independent Owner-Operators Over Time*, 35 TRANSP. L.J. 115 (2008) (addressing historical use of independent contractor truck drivers operating under another company's motor carrier authority).

B. **PHB's operations as a third party provider of yard management services**

PHB is a Florida-based third party provider of yard management services for warehouse and distribution center operations throughout the United States. *Browning Decl.*, ¶ 33.[7] "Yard" is a transportation-industry term generally referring to the areas surrounding a warehouse or distribution center where drivers will position trailers for loading, unloading, and pickup for delivery to destination. PHB provides both equipment and personnel (including, but not limited to, commercial motor vehicle drivers) to perform yard management, yard-to-dock moves, and short shuttle operations over public roadways. *Browning Decl.*, ¶ 34. The equipment PHB provides is either owned by PHB or rented or leased by PHB. *Browning Decl.*, ¶ 35. PHB holds itself out as the yard management and shuttle agent of ETG, and their relationship is governed by an Independent Contractor Motor Truck Agent Agreement (the "Agent Agreement"). *Detlefsen Decl.*, ¶ 12.

PHB alone decides which individuals it hires as drivers after receiving background information ETG gathers regarding the applicant's satisfaction of customer requirements and Federal Motor Carrier Safety Regulations specific to commercial motor vehicle drivers. *Browning Decl.*, ¶ 39.

PHB alone also sets the driver's rate of pay, dictates the hours and days the driver will work, supervises the drivers, and – as the driver's employer – would maintain driver employment records. *See Browning Decl.*, ¶¶ 4, 39. The rate of pay is different at various locations, and, depending on market conditions, includes an

---

[7] A copy of the Declaration of James Browning is included at App. 50-54.

overtime component. *Browning Decl.* ¶ 44. As of today, PHB pays drivers at 18 of 26 locations overtime.

## C.   Plaintiffs and purportedly similarly-situated individuals were employed by PHB in Dallas, Texas.

Plaintiffs Clemons, Houston, Oudems, and Gamble are four PHB drivers working at the Home Depot's distribution facility in Dallas, Texas. Their responsibilities included: (1) driving trucks to move empty trailers along with trailers loaded with Home Depot product throughout the yard; (2) driving trucks on public roads to move empty and loaded trailers with Home Depot product to and from drop yards; and (3) performing myriad duties including inspecting and ensuring the safe operation of trailers used in carrying goods in interstate commerce along with maneuvering those trailers in and out of warehouse docks and around the yard. *See Clemons Decl.* ¶¶ 7-9 (ECF No. 51-01); *Gamble Decl.* ¶¶ 6-7, 9, 12 (ECF No. 51-02); *Houston Decl.* ¶¶ 2-4 (ECF No. 51-03); *Clemons Dep.* at 71:8-17[8]; *Houston Dep.* 77:4-4-13[9]; *Oudems Dep.* at 30: 20-25, 31:1-9, 31-25, 32:1-3, 58:18-25, 59:1-22, 65:20-25, 66:1-3[10]; *Gamble Dep.* at 20:20-23, 33:3-17, 34:17-24, 83:20-24[11].  Outside of Plaintiff Houston who worked at the Home Depot Paris, Texas location for one week, the Plaintiffs have no personal knowledge of any policy or practice of ETG or PHB at any other facility outside of Dallas. *Clemons Dep.* at 112:19-24; *Houston Dep.* 40:19-25,

---

[8] Excerpts of the deposition transcript of Jimmie Clemons are included at App. 55-66.
[9] Excerpts of the deposition transcript of Edward Houston are included at App. 85-96.
[10] Excerpts of the deposition transcript of Daryl Oudems are included at App. 97-113.
[11] Excerpts of the deposition transcript of Darrick Gamble at included at App. 67-84.

41:1-2, 14-16; *Oudems Dep.* at 77:6-9, 20-25, 78:1-4, 20-22; *Gamble Dep.* at 107:19-25, 108:1.

## III.   ARGUMENT

### A.   The court should grant ETG's pending summary judgment motion, which will moot Plaintiffs' request.

As explained in ETG's summary judgment motion filed contemporaneously with this paper, the Motor Carrier Act Exemption's application turns on a question of the FMCSA's jurisdiction vis-à-vis the Department of Labor. *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 472 (5th Cir. 2010).[12]

The FMCSA has jurisdiction over any motor carrier employee who: (1) "is called on, or is subject to being called on, to drive in interstate commerce as part of the driver's regular employment"; or (2) "because of company policy and activity … could reasonably be expected to do interstate driving" despite "not personally driv[ing] in interstate commerce." *Secretary of Transportation Notice of Interpretation*, 46 Fed. Reg. 37902-02, 1981 WL 115508 (July 23, 1981).

Plaintiffs satisfy both criteria as ETG's pending summary judgment motion demonstrates, and that conclusion applies equally to a non-motor carrier entity, like PHB, that employs the drivers. *Songer*, 618 F.3d at 473 (Motor Carrier Act Exemption

---

[12] *See also Levinson v. Spector Motor Svc.*, 330 U.S. 649, 659-62 (1947) (explaining safety rationale for committing exclusive jurisdiction over classes of employees such as drivers to the FMCSA—called by its predecessor agency's name, the ICC in the opinion—and eliminating any overlapping jurisdiction by the DOL and the wage and hour regulations it oversees, the FLSA); 29 C.F.R. § 782.1 ("The Fair Labor Standards Act confers no authority on the Secretary or the Administrator to extend or restrict the scope of this exemption.").

extends to the motor carrier and non-carrier truck driver leasing company).[13] This moots the conditional certification issue completely. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73 (2013) ("the mere presence of collective action allegations in the complaint cannot save the suit from mootness once the original claim is satisfied.").

Granting ETG's summary judgment motion on the independent basis that no employment relationship with Plaintiffs exists will likewise moot Plaintiffs' conditional certification request as to ETG. *Crawford v. Saks & Co.*, 2016 WL 3090781, at *10 (S.D. Tex. June 2, 2010) (granting summary judgment motion and denying conditional certification motion because "[t]he court lacks subject-matter jurisdiction over the FLSA action" as a result of the summary judgment order); *see also O'Neal v. Kilbourne Medical Labs.*, 2007 WL 956428 (E.D. Ky. Mar. 28, 2007) (ruling on Motor Carrier Act Exemption and proceeding to deny FLSA conditional certification request as a result). If the Court is disinclined to delay ruling on Plaintiffs' *Hoffman-La Roche* notice request, the frailties of Plaintiffs' request also justify denial. Whether assessed through the "lenient standard of review" Plaintiffs

---

[13] *Songer* concluded, based on prior Fifth Circuit precedent, that "[e]xemptions under the FLSA are construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption." *Songer*, 618 F.3d at 471. The Supreme Court overruled that portion of the opinion by implication this spring in the *Encino Motorcars, LLC v. Navarro* decision. *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018) ("The Ninth Circuit also invoked the principle that exemptions to the FLSA should be construed narrowly. We reject this principle as a useful guidepost for interpreting the FLSA. Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation.'") (quoting Scalia, Reading Law, at 363). The remainder of the *Songer* opinion, however, remains good law.

advocate or another analytical framework developed by the courts, neither the efficiency nor manageability goals of the collective-action procedure would be furthered through "conditional certification." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989); *see also Salinas v. O'Reilly Automotive, Inc.*, 2005 WL 3783598, at *6 (N.D. Tex. Nov. 17, 2005) (finding "collective action would disserve the interest of judicial economy" given absence of generally applicable policy or plan that purportedly violates the FLSA).

**B.     Standard for issuing a *Hoffman-La Roche* notice.**

Following a dramatic increase in FLSA lawsuits that necessitated action "freeing employers of the burden of representative actions," Congress, in 1947, enacted an opt-in requirement to participate in a FLSA collective action. *Hoffman-La Roche Inc.,*493 U.S. at 173. Whereas the 1938 enactment of the FLSA gave an individual the right to bring FLSA claims on behalf of any "similarly-situated" employee just by filing suit, the 1947 amendment gave District Courts "procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure" through the opt-in requirement. *Hoffman-La Roche Inc.,* 493 U.S. at170-71.

The Supreme Court's *Hoffman-La Roche* decision confirmed one tool available to courts in exercising this procedural authority is notice to "potential plaintiffs" if doing so would lead to the "efficient resolution in one proceeding of common issues of law and fact." *Id*. at 170. "The details of [a district court's] exercise" of its discretion were not addressed in *Hoffman-La Roche*. Close to 30 years later, no consensus on

8

the appropriate analytical framework to apply in assessing the merits of authorizing a *Hoffman-La Roche* notice exists. *See Portillo v. Permanent Workers, LLC*, 662 Fed. Appx. 277, 279-80 (5th Cir. 2016) ("This court has never set a legal standard for collective-action certification").

Some courts assess the *Hoffman-La Roche* request under a Rule 23 rubric or a spurious class action analysis. *E.g.*, *Espenscheid v. Directsat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) (concluding "there isn't a good reason to have different standards for the certification of" an FLSA collective action and Rule 23 class actions); *H&R Block Ltd. v. Houdsen*, 186 F.R.D. 399, 401 (E.D. Tex. 1999) (identifying "spurious" class action procedure as approach some courts take in assessing request). Others use a two-stage "conditional certification" and decertification analysis adopted from the ADEA context. *See, e.g., Salinas,* 2005 WL 3783598, at *2 (noting the "majority of federal courts [use] the [two-step] approach developed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).").

Regardless of the analytical framework adopted, the end goal is the same— arriving at a reasoned conclusion as to whether sending out notice furthers the goals of manageability and efficiency. *Hoffman-LaRoche*, 493 U.S. at 170-71 (identifying "efficient resolution" of claims and "management of litigation" as seminal issues to address in the analysis of a request for court authorized notice of lawsuit); *see also Salinas,* 2005 WL 3783598, at *6 ("forcing these claims, which each involve their own

unique facts and circumstances, into a collective action would disserve the interest of judicial economy").[14]

## C.   Plaintiffs do not identify any FLSA-violating policy that supports utilizing a *Hoffman-LaRoche* notice.

Plaintiffs' allegation that not paying drivers "time and one-half their respective regular rates of pay for all hours over 40" in a week constitutes a common contention sufficient to justify authorizing a *Hoffman-LaRoche* notice misses the mark. *Conditional Cert. Motion* at 3. Contrary to what Plaintiffs would have this Court believe, assertions of widespread FLSA violations are insufficient to satisfy their burden. *Salinas*, 2005 WL 3783598, at *5-6. Rather, Plaintiffs must proffer evidence that they were victims of a common policy or procedure *in violation of the FLSA. See id*. at *9.[15]

---

[14] *See also MacGregor v. Farmers Ins. Exchange*, 2011 WL 2981466, at*2 (D.S.C. July 22, 2011) ("If plaintiffs demonstrate that they are sufficiently similar, increased efficiency is likely to result from collective action certification. If individualized determinations are likely to predominate, collective action will hinder, rather than promote efficient case management, and thus notice should not be granted."); *England v. New Century Fin. Corp*., 370 F. Supp. 2d 504, 510 (M.D. La. 2005) (declining to approve *Hoffman-La Roche* notice where "potential defenses to any alleged FLSA overtime violations will require highly individualized evidence" that "presents enormous manageability problems because there is no single decision, policy or plan at issue"); *Freeman v. Walmart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (rejecting plaintiff's assertion that "detailed analysis at" an early stage of litigation is necessary when "conditional certification" is requested, and recognizing that "[t]he Court's responsibility to intervene in the management of this litigation began when the case was filed."); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686-87 (D. Md. 2010) ("Although plaintiffs need only put forward "relatively modest" evidence that they are similarly situated in order to obtain approval to proceed as a class, "[w]hen sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, . . . a court can . . . deny certification outright[.]") (internal citations omitted).

[15] *See also Rodriguez v. RCO Reforesting, Inc.*, 2017 WL 2618751, at *2 (E.D. Cal. June 16, 2017) (denying conditional certification given absence of "substantial allegations that the putative class members were subject to a single illegal policy, plan or decision."); *Meritwether v. Beverly Hills Liquor & Grocery Inc.,* 2014 WL 200355, at *3 (E.D. Mo. Jan. 17, 2014) (denying conditional certification request because plaintiffs' alleged common policy of

An antecedent to this evidentiary proffer is, of course, first demonstrating that the FLSA even applies to the parties, which is not the case here.

First, the Motor Carrier Act Exemption relied on by all Defendants is a threshold FLSA coverage issue; individuals covered by the Motor Carrier Act Exemption are subject to the FMCSA's jurisdiction, and therefore not subject to the FLSA. *Songer,* 618 F.3d at 472. A policy that results in FMCSA jurisdiction over drivers is not an FLSA violation and cannot provide the basis for FLSA conditional certification. *See Salinas,* 2005 WL 3783598, at *9 (denying conditional certification where plaintiff failed to demonstrate that defendant's "alleged FLSA violations resulted from a 'generally applicable policy or practice'").

Second, the absence of an employment relationship between Plaintiffs and ETG precludes the FLSA's application and, in turn, approval of a *Hoffman-LaRoche* notice with respect to ETG. 29 U.S.C. § 206 (restrictions FLSA application to employer and employer arrangements); *Andel v. Patterson-UTI Drilling Co., LLC,* 280 F.R.D. 287, 295 (S.D. Tex. 2012).

As the court in *Andel* recognized, before determining whether to use the FLSA's collective action provision allowing "an action to recover" overtime on behalf "of other employees similarly-situated" (29 U.S.C. § 216(b)) "the court must resolve

---

"defendants' failure to keep adequate time and pay records as evidence of a common policy" did not violate the FLSA); *Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344, 348 (E.D.N.Y. 2011) ("The Court declines to hold that facially-lawful policies . . . can form the equivalent of a 'common policy or plan that violates[s] the law' merely because they indirectly might encourage the minimization of overtime.").

first whether the FLSA even covers each Plaintiff and therefore each putative plaintiff." *Andel*, 280 F.R.D. at 295.

The logic of this approach is undeniable—how can the court use an FLSA case management tool without certainty the FLSA even applies?  Yet numerous courts proceed in assessing whether plaintiffs have proffered evidence suggesting the employment determination can occur efficiently for all individuals who opt-in to become party plaintiffs. *E.g., Road Hog Trucking, LLC v. Hilmar Cheese Co., Inc.,* 2016 WL 6125677 (N.D. Tex. Oct. 19, 2016); *Lewis-Gursky v. Citigroup, Inc.,* 2017 WL 892604, at \*6 (M.D. Fla. Mar. 6, 2017) ("the Court is convinced that the application of the joint-employment factors to the proposed collective would result in unwieldy, plaintiff-specific inquiries that would run counter to the principles of judicial economy upon which collective certification is based."). That assessment in turn requires an analysis of the evidence Plaintiffs claim will allow for common adjudication of the economic realities test factors used to determine joint employment status. *Orozco v. Plackis,* 757 F.3d 445, 448 (5th Cir. 2014) ("In joint employer contexts, each employer must meet the economic reality test."). Plaintiffs' Motion, however, does not address these factors.

Plaintiffs' decision not to offer *any common evidentiary* basis to resolve the employment issue means they have not provided "a reasonable basis to conclude that other individuals are similarly situated" to them. *Vasquez v. Am. Bor-Trench, Inc.*, 2014 WL 297414, at \*4 (S.D. Tex. Jan. 23, 2014); *see also Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, at \*4 (S.D. Tex. Jan. 24, 2007) ("most district courts in this

Circuit as a practical matter require some factual basis to the plaintiff's allegations that a collective action is warranted before granting notice and conditional certification").

Plaintiffs' rhetoric regarding a "lenient" conditional certification standard aside, they have provided no factual basis to justify conditional certification. Nor is there a legal basis to support their request that this Court ignore this factual failing and wait until the decertification stage to determine whether they *could* have demonstrated a factual similarity to other PHB drivers. *See Hickson v. U.S. Postal Svc.,* 2010 WL 3835887, at *2 (E.D. Tex. July 22, 2010) (citing *Williams v. Accredited Home Lenders, Inc.*, 2006 WL 2085312, at *4-5 (N.D. Ga. July 25, 2006) for proposition that "mind-boggling" discovery and attendant costs required to defend a conditionally certified case are consideration in court's decision on request for *Hoffman-LaRoche* notice); *Thorogood v. Sears, Roebuck and Co.*, 624 F.3d 842, 849 (7th Cir. 2010) ("An additional asymmetry, also adverse to defendants, involves the cost of pretrial discovery in class actions. One purpose of discovery—improper and rarely acknowledged but pervasive—is 'it makes one's opponent spend money.'") (citations omitted), judgment vacated on other grounds, 131 S. Ct. 3060 (2011).

## D.   Plaintiffs have not carried their burden to show they are similarly-situated with respect to claims and defenses.

Even if this Court were to look past Plaintiffs' failure to demonstrate the FLSA's application to them, Plaintiffs' Motion offers no method for resolving, in an efficient or manageable way, their respective claims. Authorizing a *Hoffman-La Roche* notice would result only in the addition of more individuals for whom Plaintiffs

13

have no evidence to support their claim. In other words, far from furthering judicial economy, "conditional certification" would exacerbate the evidentiary issues that attend the resolution of the claims before this Court. *See Syrja,* 756 F. Supp. 2d at 687 (denying conditional certification because "[t]here can be no doubt that ultimately, the adjudication of multiple claims in this case would require the parties, the Court, and perhaps eventually a jury, to engage in an unmanageable assortment of individualized factual inquiries.").

The Motor Carrier Act Exemption defense provides an example of these inefficiencies. Plaintiffs' lawyers ostensibly contest the application of this defense—that is, they must contend no reasonable expectation existed that Plaintiffs were drivers who could be called upon to use commercial motor vehicles to transport product in interstate commerce. *Allen v. Coil Tubing Svc., LLC*, 755 F.3d 279, 282 (5th Cir. 2014). Yet that is *exactly* what purported similarly-situated individuals admitted doing in the *Harris v. PHB, Inc.,* 4:17-cv-01007 (S.D. Tex. filed Mar. 31, 2017) case that likewise seeks to recover FLSA overtime for PHB drivers:

- "Plaintiffs . . . are current and former employees of Defendants [who] were personally engaged in interstate commerce during their employment with the Defendants" (Harris First Am. Compl. ¶ 1 (ECF No. 32))

- "Defendants were an enterprise engaged in interstate commerce, operating on interstate highways, purchasing materials through commerce, transporting materials through commerce, and on the interstate highways . . . . Additionally, Plaintiffs were individuals engaged in commerce" (Harris First Am. Compl. ¶ 4 (ECF No. 32)).[16]

---

[16] A copy of referenced Harris First Amended Complaint is included at App. 145-152 for ease of reference. The *Harris* plaintiffs dismissed the collective action allegations in the case, and subsequently dismissed ETG from the lawsuit as well. *Harris* ECF No. 31 (Oct. 18, 2017)

14

That the *Harris* plaintiffs admit to the interstate nature of their work as commercial motor vehicle drivers and the interstate nature of ETG's business is consistent with ETG's summary judgment arguments. But it creates a predicament for Plaintiffs here given the Fifth Circuit's binding precedent in "*Songer* forecloses an employee-by-employee analysis" of the Motor Carrier Act Exemption. *See Allen*, 755 F.3d at 287. In turn, Plaintiffs here must either embrace the reasonable expectation of driving a commercial motor vehicle to transport product in interstate commerce for a motor carrier, which concedes in turn the Motor Carrier Act Exemption's application, or distance themselves from the similarly situated allegation. *See id.*

Plaintiffs' Motion is also devoid of any explanation or evidence as to how they will efficiently resolve whether ETG jointly employed the purported similarly-situated individuals. Their self-serving declarations that each "worked for E-Transport" and believes that other drivers were similarly-situated are insufficient to warrant approval of a *Hoffman-LaRoche* notice. *Compare Songer v. Dillon Resources, Inc.*, 569 F. Supp. 2d 703, 707-08 (N.D. Tex. 2008) (finding plaintiffs' self-serving declarations did not qualify as "substantial allegations that the putative class members were together the victim of a single decision, policy, or plan," and proceeding to deny conditional certification as a result), *with Clemons Decl.* ¶¶ 1, 6 (ECF No. 51-01); *Gamble Decl.* ¶¶ 1, 29 (ECF No. 51-02); *Houston Decl.* ¶¶ 1, 23 (ECF No. 51-03). Absent such evidence that the joint employment analysis could be efficiently

---

(dismissing collective action allegations), ECF No. 35 (Dec. 15, 2017) (Order of Dismissal without Prejudice of ETGfrom lawsuit). PHB remains a defendant in the *Harris* case.

managed across the approximately 650 drivers working at 26 facilities throughout the nation, Plaintiffs necessarily have failed to meet their evidentiary burden. *See Lewis-Gursky v. Citigroup, Inc.,* 2017 WL 892604, at \*6 (M.D. Fla. Mar. 6, 2017) ("the Court is convinced that the application of the joint-employment factors to the proposed collective would result in unwieldy, plaintiff-specific inquiries that would run counter to the principles of judicial economy upon which collective certification is based.").[17]

Moreover, Plaintiffs fail to explain what efficiency or case management goals are achieved by sending out notice 14 months into the litigation under the auspices of adhering to a judicially-created "lenient" burden that would conflict with Rule 1. *See Hoffman-La Roche Inc.*, 493 U.S. at 170 ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."); Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United

---

[17] *Lewis-Gursky* analyzed this issue in the context of a joint employment assessment that uses eight factors as opposed to the Fifth Circuit's four-factor test, but the court's reasoning applies equally here. *See, e.g., Road Hog Trucking, LLC v. Hilmar Cheese Co., Inc.,* 2016 WL 6125677 (N.D. Tex. Oct. 19, 2016); *Bouthner v. Cleveland Const., Inc.*, 2012 WL 738578, at \*7 (D. Md. Mar. 5, 2012) (assessing four-factor joint employment analysis that mirrors Fifth Circuit test and holding "[i]n this case, to determine the economic reality of the employment relationship between the Defendants and the Plaintiffs, individualized questions would necessarily predominate regarding which defendant hired each plaintiff, which defendant supervised them, which defendant determined their rate of pay, and the interaction and relationship between the individual defendant" across different locations).

States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

*Hoffman-La Roche* approved "[c]ourt authorization of notice [when it] serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffman-La Roche Inc.*, 493 U.S. at 172. Neither goal is furthered by approving a opt-in mailing now to more than 650 drivers, across 16 states, and 26 facilities based on speculative declarations a year into litigation from four individuals working primarily at a single location. Concluding otherwise would undermine the reason for creating an opt-in procedure under Section 216(b)(l), "limiting private FLSA plaintiffs to employees who assert claims in their own right," and (2) "freeing employees of the burden of representative actions." *Id.* at 173. Buzz words from various cases about a "lenient" burden for Plaintiffs cannot pave over reality: after 14 months of discovery, the evidence before the Court does not demonstrate any efficiencies are gained by facilitating an opt-in process.[18]

---

[18] *See Saleen v. Waste Mgmt., Inc.*, 2009 WL 1664451, at *8 (D. Minn. June 15, 2009) ("To familiarize itself with Plaintiffs' position regarding manageability, the Court inquired at the May 21, 2009 hearing how Plaintiffs would provide common proof at trial to meet the goals of judicial efficiency. Plaintiffs insisted that it was "unfair" and inappropriate for the Court to consider such issues at this stage. However, it is incumbent on a court at the conditional-certification stage to review all the evidence before it to determine whether it should facilitate notice and thereby expand the scope of litigation. Were such a complete review avoided, as Plaintiffs suggest it must be, a court would abandon its duty to determine whether the matter before it is an appropriate case for collective treatment.").

**E.   Plaintiffs have not met their burden to show other individuals wish to opt in.**

In order to achieve conditional certification, Plaintiffs must also show that other yard drivers wish to opt in to this action. *See Songer,*569 F. Supp. 2d at 707.[19] In deciding whether plaintiffs have met their burden to show other individuals wish to opt in, courts in this District have reiterated that they are "mindful that [courts], like practicing attorneys, ha[ve] a responsibility to refrain from stirring up unwarranted litigation." *Id.* at 706-07 (*quoting Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007) (internal citations omitted).

The declarations proffered by Plaintiffs, like those considered in *Songer*, contain "primarily conclusory allegations unsupported by any factual assertions demonstrating the basis of the affiants' knowledge." *Songer,* 569 F. Supp. 2d at 707 (finding affidavits identify only three additional potential plaintiffs and present "no evidence to show that either of the other named prospective plaintiffs, or any of the other forty to fifty employees at the Waxahachie terminal, would actually opt in given the opportunity"); *see also Hall v. Burk*, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (stating that in deciding if there is a reasonable basis for crediting the assertion that similarly situated individuals exist, "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden.").

---

[19] The *Frazier* case, cited by Plaintiff, does not stand for the proposition that this District disregards whether Plaintiff has met his burden to show other individuals want to opt in to the action. *Conditional Cert. Motion*, p.13 (citing *Frazier v. Dallas/Fort Worth Int'l Airport Bd.,* 285 F. Supp. 3d 969, 973 (N.D. Tex. 2018)).

18

Plaintiff Clemons' statement that he "believe[s] many yard drivers will join this lawsuit" is not sufficient to meet his burden to show that other yard drivers wish to join this lawsuit. *Clemons Decl*. at ¶6 (ECF No. 51-1). Neither do the subjective statements of Plaintiff Houston and Plaintiff Gamble satisfy the burden here. *Gamble Decl*. ¶29 (ECF No. 51-2); *Houston Decl*. ¶23 (ECF No. 51-3); *see Songer*, 569 F. Supp. 2d at 708 (quoting *O'Donnell v. Robert Half Int'l, Inc*., 534 F. Supp.2d 173, 179 (D. Mass 2008) ("[p]laintiffs must present information, i.e., more than speculation or bald assertions by the plaintiffs, that putative class members are interested in joining the suit.")); *Detho v. Bilal*, 2008 WL 1730542, at *5 (S.D. Tex. Apr. 10, 2008) (holding that plaintiff's affidavit stating a belief that there are other employees who may be interested was insufficient for conditional certification).

## F.   Plaintiffs' proposed notice method is overly broad and should be limited.

While Defendants believe that conditional certification is inappropriate, if certification is granted despite this opposition, Defendants should be required to produce potential plaintiffs' names and addresses only. *See, e.g., Arceo v. Orta*, 2017 WL 4948535, at *7 (N.D. Tex. Nov. 1, 2017) (limiting disclosure to "the names and last known addresses of all person who fall within the conditionally certified class."). Plaintiffs seek to expand the scope of traditional notice methods and instead ask to post notice "at the job site for 90 days". *Conditional Cert. Motion*, p. 17. Further, Plaintiffs seek production of "the full names (including middle if known), last known addresses, last known cell phone numbers, e-mail addresses, last four digits of their

Social Security Number, and dates of employment" along with posting of the notice at jobsites for all potential plaintiffs. *Id.*

These requests are overly broad, and a far cry from the neutral notification of the lawsuit permitted by the *Hoffman-La Roche* decision. *See Arceo*, 2017 WL 4948535, at *6-7; *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 865 (S.D. Tex. 2012) (production of "information beyond the names and telephone numbers of potential class members is overbroad . . . ."); *Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842, at *5 (N.D. Tex. Oct. 7, 2004) (rejecting disclosure of information other than names and addresses); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012), report and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) ("Defendants are not obligated to provide telephone numbers, dates or birth or dates of employment for potential class members.").

*Hoffman-La Roche* teaches that "in exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. *To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.*" 493 U.S. at 488. Adopting Plaintiffs notice request would unnecessarily publicize the lawsuit at the locations of customers not involved in this lawsuit, implicate privacy interests, and otherwise give short shrift to the "scrupulous" care required in authorizing notice.[20]

---

[20] Clemons Dep. at 25:13-25 (indicating that the office at the Beckleymead location was shared by Home Depot employees and personnel for Swift); Gamble Dep. at 75:19-25, 76:1-2 (stating that ETG and PHB offices were alongside Home Depot employees); Gamble Dep. at 95:10-12 (stating Home Depot was the customer at the Beckleymead location).

## IV.    CONCLUSION

Approval of a *Hoffman-La Roche* notice is a procedural tool allowing courts to achieve judicial economy and create more manageability in the litigation of FLSA claims. If the FLSA is not shown to apply in the first instance, use of such a procedural tool is improper. The impropriety of using this procedural tool is further demonstrated by the absence of evidence that an efficient manner to adjudicate proposed opt-in plaintiffs' claims exists. Defendants respectfully request that the Court deny Plaintiffs' Motion.

Respectfully submitted,

*s/ Emily A. Quillen*
Emily A Quillen
Scopelitis Garvin Light Hanson & Feary PC
801 Cherry Street, Ste. 1075
Fort Worth, TX 76102
Telephone: 817-869-1700
Facsimile: 817-878-9472
Email: equillen@scopelitis.com

James T Spolyar
Admitted *Pro Hac Vice*
Scopelitis Garvin Light Hanson & Feary PC
10 West Market Street
Suite 1400
Indianapolis, IN 46204
Telephone: 317-637-1777
Facsimile: 317-687-2414
Email: jspolyar@scopelitis.com

Andrew Butcher
Admitted *Pro Hac Vice*
Scopelitis Garvin Light Hanson & Feary PC
30 W. Monroe Street, Suite 600
Chicago, IL 60603
Telephone: 312-255-7172

Facsimile: 312-422-1224
Email: abutcher@scopelitis.com

Counsel for Defendant E-Transport Group,
Inc. n/k/a E-Transport Group, LLC


/s Jeffrey L. Glaser
Brett C. Bartlett*
bbartlett@seyfarth.com
Jeffrey L. Glaser*
jglaser@seyfarth.com
Katherine M. Smallwood*
ksmallwood@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA 30309-3958
Telephone: 404-885-1500
Facsimile: 404-892-7056
*admitted *pro hac vice*

David Watkins
Jason E. Winford
JENKINS & WATKINS,
A Professional Corporation
4300 MacArthur Avenue, Suite 165
Dallas, Texas 75209
Telephone: 214-378-6675
Facsimile: 214-378-6680

Counsel for Defendants PHB, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 1, 2018, upon electronically filing the foregoing document, a copy of same was served on all counsel of record via the court's ECF system.

*s/ Emily A. Quillen*
Emily A. Quillen

4831-1433-9685, v. 15